**Bruce James POWELL, Sr., Individually, as Natural Father of Bruce James Powell, Jr., and as Administrator of the Estate of Bruce James Powell, Jr., Plaintiff,**

v.

**DEPARTMENT OF HUMAN RESOURCES OF the STATE OF GEORGIA, et al., Defendants.**

Civil A. No. CV 195–128.

United States District Court, S.D. Georgia, Augusta Division.

Feb. 21, 1996.

---

Claude Milton Kicklighter, Jr., Gerald M. Edenfield, Edenfield & Cox, P.C., James Bevard Rutledge, III, Statesboro, GA, for Bruce James Powell, Sr.

Carol Atha Cosgrove, William C. Joy, Atlanta, GA, for Georgia Department of Human Resources, James G. Ledbetter, Doug Greenwell, Pat Fitzgerald, Mignon Rosen, and Jane Doe.

## ORDER

BOWEN, District Judge.

Before this Court is Defendants' Motion to Dismiss the Complaint in this civil rights action under 42 U.S.C. § 1983. Plaintiff Bruce Powell, Sr., alleges that the substantive and procedural due process rights of his infant son, Bruce Powell, Jr., were violated

by Defendants' deliberate indifference toward the baby's safety when Defendants had reasonable cause to believe the baby was the victim of abuse. Named as Defendants are the Department of Human Resources of the State of Georgia (the "DHR"), agents or employees of the DHR, and agents or employees of the Richmond County Department of Family and Children Services.[1] Defendants' Motion to Dismiss the Complaint is **GRANTED** for the reasons stated herein.

## I. FACTUAL BACKGROUND[2]

Bruce James Powell, Jr., was born on April 26, 1993, out-of-wedlock. Approximately one month after the baby was born, Plaintiff and the mother separated. The baby lived with his mother, age 15, who married James Loren, age 20, on July 22, 1993.

On August 29, 1993, the mother took the baby to the maternal grandmother's house. The grandmother took the baby to her sister's house, the great aunt of the baby. The great aunt noticed bruises on the baby's legs and head. She took the baby to Plaintiff's work to show him the bruises. They called Richmond County Department of Family and Children Services (the "DFCS").

Defendant Mignon Rosen, a caseworker, met Plaintiff and the great aunt and examined the baby. She noted the injuries on the baby and allegedly assured Plaintiff that the child would be protected from further abuse. She allowed the baby to remain with the great aunt in her protective custody until she could talk with the mother and Loren. The baby was not seen by a doctor even though Rosen's superior advised her to have the baby examined.

Later that night, the grandmother and the mother showed up at the great aunt's house with a police officer to get the baby. The officer called Rosen. Rosen had previously called "Ask a Nurse" to inquire about the

nature of the injuries and an emergency shelter, which informed Rosen that it could take the baby for the night. Despite a clear indication of abuse and assurances to Plaintiff and the great aunt that the baby would be protected, Rosen allowed the baby to be returned to the protective custody of the grandmother. Rosen told the grandmother not to allow the mother to take the baby home until she conducted a further investigation. At this point, Rosen had been informed that Loren was an underage drinker who handled the baby roughly.

The next day, the case was assigned to Jane Doe, an unknown caseworker. No action was taken.

The following day, Jane Doe called the grandmother and found out the baby had returned to the mother's home the day before, contrary to the instructions of Rosen. During the conversation, Jane Doe was told of the baby's home life, in which the mother and Loren lived with Loren's sister and her boyfriend in an environment of excessive drinking. The grandmother also told Jane Doe that she thought the baby had been dropped. The mother and Loren did not meet Jane Doe as requested.

Jane Doe did nothing else on this case until September 16, 1993, when she made this entry in the record: "Another intake. Due to excessive # of intakes and [Caseworker] trying to get case load in order to be out on [leave] starting 9/17/93, [Caseworker] unable to make another contact."

The baby, not yet five months old, was killed that day; the official cause of death was "blunt force trauma to the head." The baby had been severely abused and neglected for sixteen days. The treating physicians described the baby's injuries as one of the worst cases of child abuse, which included severe inner cranial bleeding, retinal bleed-

---

**1.** The named individual Defendants, all sued in both their individual and official capacities, are as follows: James G. Ledbetter, Commissioner of the DHR; Doug Greenwell, Director of the Division of Family and Children Services for DHR; Pat Fitzgerald, Director of the Richmond County DFCS; Mignon Rosen, an employee of the Richmond County DFCS; and Jane Doe, an employee of the Richmond County DFCS.

**2.** In considering Defendants' Motion to Dismiss, the factual allegations of the Complaint have been accepted as true and construed in a light most favorable to Plaintiff. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

ing, and over 100 bruises on his body. The mother and Loren have been convicted of murder.

In the Complaint, Plaintiff alleges Defendants violated the baby's procedural and substantive due process rights by affirmatively directing the baby be placed back into a known dangerous environment and deliberately disregarding the safety of the baby. Plaintiff also asserts a claim under the Georgia Tort Claims Act. Defendants seek dismissal of all claims on several grounds.

## II. LAW/ANALYSIS

■ Plaintiff asserts his federal claims pursuant to 42 U.S.C. § 1983. Section 1983 creates a federal remedy for a deprivation of any federal right. *Wideman v. Shallowford Comm. Hosp., Inc.*, 826 F.2d 1030 (11th Cir. 1987). Plaintiff must first show that Defendants acted under color of state law. *Id.* This element is not disputed. An actionable § 1983 claim also requires proof of a deprivation of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Id.* Plaintiff contends Defendants, acting under color of state law, violated the baby's due process rights as guaranteed by the Fourteenth Amendment.

In the present Motion to Dismiss, Defendants first assert their Eleventh Amendment immunity to this suit in their official capacities. Defendants then argue Plaintiff has failed to state a claim upon which relief may be granted. Finally, Defendants assert qualified immunity in their individual capacities to any claim that may exist in this case.

### A. Eleventh Amendment Immunity

■ Section 1983 is not a waiver of Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The Eleventh Amendment prohibits suit brought by an individual in federal court against a state and its agencies unless the state either consents to suit or waives its

immunity. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Eleventh Amendment immunity also extends to a state official or employee sued in an official capacity as well as to other entities properly described as "arms of the state." *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Fouche v. Jekyll Island State Park Auth.*, 713 F.2d 1518 (11th Cir.1983).

■ In determining whether a defendant is an "arm of the state" for purposes of Eleventh Amendment immunity, federal courts must examine the state law which creates and defines the particular entity. *Brown v. East Central Health Dist.*, 752 F.2d 615 (11th Cir.1985). In this case, Plaintiff concedes that the DHR is a state agency. Thus, to the extent Plaintiff asserts claims against the DHR and its employees in their official capacities, the claims are barred by the Eleventh Amendment.

■ With regard to the Richmond County DFCS employees, I have reviewed the analysis of *Bendiburg v. Dempsey*, 707 F.Supp. 1318 (N.D.Ga.1989)[3], in which the United States District Court of the Northern District of Georgia determined that each county DFCS is an "arm of the state." The court examined the creation of the DFCS, the degree of control by the state, the funding of the DFCS, what funds would be used to satisfy any judgment against the DFCS, and how the state courts have treated the DFCS. *Id.* at 1330–31. I fully concur with the following conclusion of the Northern District of Georgia:

[T]he county departments, including the defendant Cobb County Department of Family and Children Services, were created by state law to administer the public assistance programs of the Georgia Department of Human Resources and their respective counties; that they were established in each county of the state merely to facilitate the more efficient administration of these programs; and that they are therefore state rather than county entities

---

**3.** This decision was affirmed in part and reversed in part on other grounds by *Bendiburg v. Dempsey*, 909 F.2d 463 (11th Cir.1990), *cert. denied*,

500 U.S. 932, 111 S.Ct. 2053, 114 L.Ed.2d 459 (1991).

for the purposes of eleventh amendment immunity.

*Id.* at 1334. Thus, the named employees of the Richmond County DFCS sued in their official capacities are immune from suit.

The Eleventh Amendment does not bar Plaintiff's federal claims against any named employees in their individual capacities, however.

## B. Due Process

 Plaintiff's § 1983 claim is brought under the due process clause of the Fourteenth Amendment.[4] Defendants contend that Plaintiff's federal claims should be dismissed for failure to state a claim upon which relief may be granted. Hence, as a threshold matter, it must be determined whether the baby possessed any federal right subject to a constitutional violation. This Court should grant the motion to dismiss only if it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Taylor By and Through Walker v. Ledbetter*, 818 F.2d 791 (11th Cir. 1987), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989).

### 1. *Substantive Due Process*

Plaintiff alleges the following in his Complaint: "The defendants violated the Baby's fundamental rights [to life and liberty] by depriving the Baby of his safety and affirmatively directing that the child be placed in the care of persons who were physically abusing and torturing said Baby, and who ultimately killed the Baby." This claim invokes the substantive component of the Due Process Clause.

The United States Supreme Court rejected a substantive due process claim in a very similar case in *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189,

109 S.Ct. 998, 103 L.Ed.2d 249 (1989). In *DeShaney*, the child, Joshua, was in the legal custody of his father. When the child was three, he was admitted into the hospital with multiple bruises and abrasions. Suspecting child abuse, the local Department of Social Services obtained a court order placing the child in the temporary custody of the hospital. However, after deciding there was insufficient evidence to retain custody, DSS released him to his father after three days. A month later, the child was treated for suspicious injuries again. No action was taken. For the next six months, the caseworker made monthly visits to the child's home, during which she noticed a number of suspicious injuries but never removed Joshua from the home. The child was treated once again at the hospital. No action was taken. Finally, five months later, the father beat Joshua so badly that he fell into a coma. *Id.* at 192–93, 109 S.Ct. at 1001–1002.

 The Supreme Court held that a state does not have an affirmative duty to protect its citizens from "private violence" unless a special relationship exists with that citizen such that a duty to protect arises. *Id.* at 197, 109 S.Ct. at 1004. Such a special relationship only exists where "the State takes a person into its custody and holds him there against his will." *Id.* at 199–200, 109 S.Ct. at 1005 (citing *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (recognizing a state's duty to provide adequate medical care to incarcerated prisoners); *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (recognizing a state's duty to provide for the "reasonable safety" of involuntarily committed mental patients)).[5] In *DeShaney*, the Court found that the state did not place Joshua in a worse position than that in which he would have been had it not acted at all; the state played no part in the creation of the dangers, nor did it do anything to render Joshua any more vulnerable.

---

4. Plaintiff also asserts a claim for violation of the baby's Eighth Amendment rights. However, the Eighth Amendment applies only to circumstances arising after criminal convictions. *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 199 n. 6, 109 S.Ct. 998, 1005 n. 6, 103 L.Ed.2d 249 (1989). Accordingly, this claim is dismissed.

5. The *DeShaney* Court does not address whether a special relationship giving rise to an affirmative duty to protect exists when a child is placed in a foster home operated by state agents as the Eleventh Circuit has in *Taylor By and Through Walker v. Ledbetter*, 818 F.2d 791 (11th Cir.1987). *DeShaney*, 489 U.S. at 201 n. 9, 109 S.Ct. at 1006 n. 9.

*Id.* at 201, 109 S.Ct. at 1006. Thus, no affirmative duty to protect against acts of third parties arose under substantive due process analysis.[6]

■ The *DeShaney* case precludes Plaintiff's substantive due process claim in this case. The determinative factor considered by the *DeShaney* Court in the recognition of a substantive due process right to state protection of life and liberty was the custody and control exercised by the state over the abused child. In this case, as in *DeShaney*, the state did not have the baby in its custody or its control such that it had to provide the basic human necessities to the baby. *See id.* at 200, 109 S.Ct. at 1005–1006. The baby was in the custody and control of his mother and Loren. Thus, Plaintiff cannot state a claim for the violation of the baby's substantive due process rights under the facts of this case. *See also Wooten v. Campbell*, 49 F.3d 696 (11th Cir.1995) (the deceased child's substantive due process rights were not violated when he was abducted and killed by his father because he had been in the physical custody and control of his mother at the time; the state's responsibility of monitoring and arranging the father's visitation with the child did not create a special relationship between the child and the state sufficient to invoke substantive due process protection). Plaintiff argues this case is distinguishable from *DeShaney* because the focus of the plaintiff's claim in *DeShaney* was the state's failure to act. In the case sub judice, Plaintiff alleges the state affirmatively took the baby from a safe haven (the great aunt) and placed him in a known zone of danger, such that the state made the baby worse off than he would have been had the state not acted at all.

In *DeShaney*, Joshua was placed in state custody for three days and subsequently placed back into a zone of danger. 489 U.S. at 192, 109 S.Ct. at 1001. Thus, while the state in *DeShaney* failed to act in many instances, it also affirmatively acted to place Joshua back into his father's custody, just as

Defendants in this case, so it is alleged, affirmatively placed the baby back into an abusive environment. Thus, Plaintiff's distinction between *DeShaney* and this case is without merit.

Moreover, the plaintiff in *DeShaney* argued that the temporary exercise of custody over Joshua was a specific proclamation by the state that it intended to protect him against abuse, thereby creating the necessary special relationship between Joshua and the state. *Id.* at 197, 109 S.Ct. at 1004. However, the Supreme Court stated that the temporary custody did not alter the analysis: "The State does not become the permanent guarantor of an individual's safety by having once offered him shelter." *Id.* at 201, 109 S.Ct. at 1006.

Accordingly, Plaintiff's substantive due process claim must be dismissed for failure to state a claim.

### 2. *Procedural Due Process*

■ Procedural due process claims concern expectations created by state law. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In determining whether the state law creates a protected liberty interest, the court must examine whether the state has imposed specific substantive limitations on the discretion of the state officers or employees such that their duties are of a mandatory character. If not, the plaintiff cannot have a legitimate claim of entitlement to the interest, but only a unilateral expectation of it.

■ In this case, Plaintiff's procedural due process claims rest primarily upon the Richmond County Child Abuse Protocol (the "Protocol"), enacted pursuant to O.C.G.A. § 19–15–2. Plaintiff contends the Protocol places mandatory duties on DFCS, creating "a legitimate and sufficiently vested claim of entitlement to receive such protective services as provided therein." Compl. ¶ 72.

The Protocol, implementing the procedure to be used by Richmond County DFCS em-

---

**6.** The Supreme Court did not address whether the Wisconsin child protection statutes gave Joshua an "entitlement" to receive protective services, such that failure to provide those ser- vices would be subject to a procedural due process attack. *DeShaney*, 489 U.S. at 195 n. 2, 109 S.Ct. at 1003 n. 2. Thus, *DeShaney* does not affect Plaintiff's procedural due process claim.

ployees in child abuse cases, read in part as follows in August and September of 1993:

When a report of child abuse/neglect is received by DFCS, the case shall be assigned to a caseworker to make an initial assessment/investigation (including whether the case is that of a caretaker or noncaretaker). In determining the appropriate action to be taken by DFCS, the case worker shall go to where the child is located to conduct an interview with the child to establish that the child is in fact alleging abuse/neglect.

If a report is received alleging any allegation or evidence of physical injury to a child, DFCS shall take the following action or actions:

1. Seek protective custody of the child. (SEE JUVENILE COURT SECTION)

2. If appropriate, allow the child to remain with its family and provide ongoing monitoring and treatment.

3. Immediately notify the appropriate law enforcement agency pursuant to O.C.G.A. Section 19–7–5. (SEE LAW ENFORCEMENT SECTION)

4. File any and all Juvenile Court proceedings necessary for the protection of the child.

5. If there is reasonable cause to believe abuse has occurred, DFCS will seek a physical examination in those instances where a medical test will be needed to substantiate the same, or will photograph evidence of physical abuse where a medical examination is not necessary. Any physical examination will be conducted as expeditiously as possible. (SEE PHYSICAL EXAMINATION SECTION) . . .

Richmond County Child Abuse Protocol, pp. 6–7 (as amended on June 8, 1993).

The enabling statute provides that each county "shall" have a "written document outlining in detail the procedures to be used in investigating and prosecuting cases arising from alleged child abuse and the methods to be used in coordinating treatment programs for the perpetrator, the family, and the child." O.C.G.A. § 19–15–2(e). The purpose of the Protocol "shall be to ensure coordination and cooperation between all agencies involved in a child abuse case so as to increase the efficiency of all agencies handling such cases, to minimize the stress created for the allegedly abused child by the legal and investigatory process, and to ensure that more effective treatment is provided for the perpetrator, the family, and the child." O.C.G.A. § 19–15–2(f). It is clear from this language that the Georgia legislature intended to have each county plan and implement a comprehensive outline of the procedures to be used in child abuse cases. The Protocol itself outlines specific procedures to be taken in a child abuse case. It mandates that an employee who receives a report of child abuse "shall" take one of the stated actions.[7] The Protocol not only applies to DFCS action, but it also comprehensively coordinates the activities of law enforcement, the courts, the office of the district attorney, local hospitals and caregivers, the Board of Education, the Augusta Advocacy Center, the Department of the Army, and other treatment agencies.

Given the comprehensive intent of Georgia lawmakers and the mandatory nature of the Protocol as it applies to all named agencies, the Protocol vests abused children with an entitlement to the procedures and protection mandated therein. Thus, an abused child may not be deprived of these procedures and protection without procedural due process.

In the case sub judice, Plaintiff alleges sufficient facts in the Complaint that if accepted as true would invoke the protection of the Protocol. Plaintiff also alleges facts sufficient to show that the Protocol was not

---

7. In addition to the procedure set forth above, the Protocol also provides for the following procedures, in pertinent part:

Pursuant to O.C.G.A. § 19–7–5 if a report of child abuse, sexual assault, or sexual exploitation is made to DFCS, or independently discovered by said agency, and it has reasonable cause to believe such report is true, then the agency *shall* immediately notify the appropriate authority or District Attorney and forward the proper reports within a timely manner. Richmond County Child Abuse Protocol, p. 9 (emphasis added).

Every abused child should have a physical examination as soon as possible following disclosure of the abuse.

*Id.* at p. 13.

followed satisfactorily. Specifically, the facts show the baby was never seen by a doctor, the district attorney and the courts were never contacted, and the family's home was not subject to ongoing monitoring and treatment. Plaintiff's allegations show that not only was no action taken for this baby for sixteen days, but the state affirmatively placed the baby back into a known abusive situation contrary to the spirit and purpose of the Protocol as well as basic common sense.

"In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*" *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990) (emphasis in original) (citation omitted). In this case, the issue is whether the baby's entitlement to the protection afforded by the state by the Protocol was transgressed without constitutionally adequate safeguards or procedures.

■ Defendants argue the Plaintiff's procedural due process claim is barred under the holdings of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). The *Parratt/Hudson* rule stands for the proposition that where a state official's random and unauthorized actions result in the deprivation of either a liberty or property interest, adequate post-deprivation process is all a state must provide and is constitutionally sufficient.[8] The basis for this rule is that if the deprivation of property or liberty interests is "random and unauthorized," and not the result of some established state procedure, the state "cannot predict precisely when the loss would occur," making pre-deprivation process impractical. *Zinermon,* 494 U.S. at 129, 110 S.Ct. at 985. If the state provides adequate post-deprivation process or a state remedy, such as a common law tort remedy, then the due process clause has not been violated because a procedural due process violation is not complete "unless or until the State fails to provide due process." *Id.* at 123, 110 S.Ct. at 982.[9]

■ Assuming the alleged facts are true, the baby's rights were violated by the random and unauthorized actions of state officials in not following the established Protocol. However, these actions are not foreseeable by the state. Moreover, the state could not provide a pre-deprivation process to the baby even if the state could foresee its agents not following the Protocol. The inquiry must focus on the adequacy of the post-deprivation process under the *Parratt/Hudson* rule.

Defendants argue that because a state tort remedy exists under the Georgia Tort Claims Act, the state has provided the baby with sufficient post-deprivation process to require a dismissal of the procedural due process claim. Plaintiff points out that Defendants have asserted certain immunities in defense of a claim under the Georgia Tort Claims Act. Plaintiff argues, therefore, that the Georgia Tort Claims Act cannot be an adequate state law remedy if the immunities bar the claim against Defendants. The Eleventh Circuit has squarely addressed this issue in *Rittenhouse v. DeKalb County,* 764 F.2d 1451 (11th Cir.1985), in which the court held that the existence of sovereign immunity does not render a state law remedy inadequate under *Parratt.* Thus, assuming without deciding that Defendants would be immune from suit under the Georgia Tort Claims Act, that immunity does not affect the adequacy of this post-deprivation process afforded by the state. Accordingly, Plaintiff's procedural due process claim must be dismissed under the *Parratt/Hudson* rule.

---

8. In this case, it is clear that pre-deprivation process was not provided. Thus, the inquiry focuses on the adequacy of the post-deprivation process.

9. If the deprivation at issue resulted from "an established state procedure," then the post-deprivation remedies or processes would not suffice to

satisfy due process. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). Here, Plaintiff has not alleged that Defendants' actions were the result of an established state procedure. Thus, there must be an inquiry into the adequacy of post-deprivation remedies or processes under the *Parratt/Hudson* rule.

### III. CONCLUSION

As stated above, the Department of Human Resources and the individual Defendants in their official capacities are immune from this suit under the Eleventh Amendment. Furthermore, Plaintiff has failed to state a claim for relief under both the substantive and procedural components of the Due Process Clause. The Court therefore need not address the doctrine of qualified immunity. Defendants' Motion to Dismiss is **GRANTED.**

Having determined Plaintiff has stated no viable federal claim, the Court declines to exercise jurisdiction over Plaintiff's claim under the Georgia Tort Claims Act, 28 U.S.C. § 1367(c)(3), which is **DISMISSED WITHOUT PREJUDICE.** The clerk is instructed to **ENTER FINAL JUDGMENT** in favor of Defendants and **CLOSE** this case. Costs are taxed against Plaintiff.

**ORDER ENTERED.**