Kanita MCCALL, as next friend and guardian of Rayshom Odom, a minor, Plaintiff,

v.

DEPARTMENT OF HUMAN RESOURCES, et al., Defendants.

No. 5:01–CV–247–2(DF).

United States District Court, M.D. Georgia, Macon Division.

Nov. 29, 2001.

Lonzy F. Edwards, Macon, GA, for Plaintiff.

John Custer Jones, Devon Orland, Atlanta, GA, Frank P. Harris, Marietta, GA, for Defendants.

FITZPATRICK, District Judge.

Plaintiff has filed a two-count complaint against the Georgia Department of Human Resources; Marjorie Almand, individually and as Director of the Bibb County Department of Family and Children Services; Ola Mae Womble, the foster parent of Rayshom Odom; Alison Mitchell, a social worker employed by the Bibb County Department of Family and Children Services; and Sandra Gibson, a supervisor employed by the Bibb County Department of Family and Children Services.[1] Plaintiff is seeking damages for injuries suffered by Rayshom Odom while in foster care. Before the Court is Defendants' motion to dismiss (tab # 2). Oral argument on Defendants' motion was held on October 12, 2001.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Accepting the allegations in the complaint as true, as the Court must on a motion to dismiss, the following facts constitute the basis for Plaintiff's claims. At some unspecified time, Rayshom was placed in the custody of Defendant DHR, which in turn placed him in a foster home, and Defendants Almand, Mitchell, and Gibson assumed responsibility for his supervision, monitoring, and care. While Rayshom was in foster care, he repeatedly suffered physical, mental, and emotional abuse from other foster children who had known propensities for violence. Additionally, on or about August 14, 2000, Rayshom suffered severe injuries to his head. As a result of this abuse and these injuries, Rayshom has sustained and continues to sustain physical, mental, and emotional damages.

Plaintiff filed this action on behalf of Rayshom in the Superior Court of Bibb County against the Georgia Department of Human Resources and the officials involved in the placement of Rayshom in foster care. Defendants subsequently removed this action to the United States District Court for the Middle District of Georgia, Macon Division, on the basis of federal-question jurisdiction and supplemental jurisdiction. The complaint alleges that Defendants' gross neglect and deliberate indifference to Rayshom's injuries deprived him of his constitutional rights. Specifically, the complaint alleges that (1) Rayshom's foster parent, Ms. Womble, failed to assess his injuries properly and to obtain prompt and adequate medical treatment for him, (2) Defendants failed to adequately monitor, supervise, and care for Rayshom, (3) Defendants failed to ensure that Rayshom had a safe living environment, (4) Defendants knew or should have known that Rayshom was being physically, mentally, and emotionally abused and that they deliberately failed to learn about it, and (5) Defendants failed to follow the mandates of Georgia law concerning their obligation to ensure Rayshom's well-being while in foster care. Plaintiff brought the complaint in two counts: Count One alleges that Defendants are liable under the Georgia Tort Claims Act, and Count Two alleges that Defendants

---

1. Pursuant to an order entered on October 19, 2001, Ms. Womble has been dismissed from this case.

are liable under 42 U.S.C.A. § 1983 for violating Rayshom's federal constitutional rights.

## II. DISCUSSION

The complaint suffers from what is perhaps the most common, and certainly the most frustrating, flaw in civil rights complaints filed in this district: it is unclear in several respects. First, Plaintiff has not clearly stated whether each count is being asserted against all Defendants or just some of them. Second, Plaintiff has not clearly stated whether the individually named Defendants (with the exception of Defendant Almand) are being sued in their individual capacities, their official capacities, or both. That being said, the Court turns to the complaint in this case. It seems clear from the face of the complaint that Count One is being asserted only against Defendant DHR and that Count Two is being asserted only against Defendants Almand, Mitchell, and Gibson. However, in their briefs and during oral argument, the parties argued as if both counts are being asserted against all Defendants. Therefore, to give Plaintiff the benefit of the doubt, the Court will analyze each count as to each Defendant.

### A. *Count One—Georgia Tort Claims Act*

#### 1. **Department of Human Resources**

■ Count One clearly alleges that Defendant DHR, which is a state agency, is liable for Rayshom's injuries under the Georgia Tort Claims Act. Defendant DHR responds that it is immune from suit in federal court under the Eleventh Amendment.

■ The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Though by its plain terms the Eleventh Amendment only precludes federal courts from entertaining suits against a state brought by citizens of another state, it has been construed to bar suits against a state brought by that state's own citizens as well." *McClendon v. Georgia Dep't of Cmty. Health,* 261 F.3d 1252, 1256 (11th Cir.2001). Thus, absent a waiver of Eleventh Amendment immunity by the state or a valid abrogation by Congress, the Court lacks subject-matter jurisdiction to entertain the claim presented in Count One. *See id.* at 1256–57 (describing the jurisdictional nature of the Eleventh Amendment's limitation on judicial authority).

■ According to the Supreme Court, "a State will be deemed to have waived its immunity only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 239–40, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (alteration in original). Under the Georgia Constitution, the state's sovereign immunity can be waived only "by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const. art. I, § II, ¶ IX(e); *see also Lapides v. Board of Regents of the Univ. Sys. of Ga.,* 251 F.3d 1372, 1375 (11th Cir.2001) ("Therefore, immunity in Georgia may be waived only through statute."). The Georgia Constitution specifically allows the General Assembly to waive the state's sovereign immunity by enacting a State Tort Claims Act. *See* Ga. Const. art. I, § II, ¶ IX(a). Pursuant to this authority, the General Assembly enacted the Georgia Tort Claims Act, which provides a limited waiver of the state's sovereign immunity. *See* O.C.G.A.

§§ 50–21–20 to –37 (1998 & Supp.2001). With certain enumerated exceptions, *see* O.C.G.A. § 50–21–24, "[t]he state waives its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment." O.C.G.A. § 50–21–23(a). However, "[t]he state waives its sovereign immunity only to the extent and in the manner provided in [the GTCA] and only with respect to actions brought in the courts of the State of Georgia. The state does not waive any immunity with respect to actions brought in the courts of the United States." O.C.G.A. § 50–21–23(b); *see also* Ga. Const. art. I, § II, ¶ IX(f) ("No waiver of sovereign immunity under this Paragraph shall be construed as a waiver of any immunity provided to the state or its departments, agencies, officers, or employees by the United States Constitution.").

■ Because sovereign immunity in Georgia may be waived only by statute, and because the GTCA specifically disavows any intent to waive the state's Eleventh Amendment immunity, Count One is barred by the Eleventh Amendment.[2] Additionally, although Plaintiff apparently does not argue that Defendants' removal of this case from state court constitutes a waiver of the state's Eleventh Amendment immunity, the Court notes that removal cannot constitute a waiver because the Georgia Attorney General lacks the statutory authority to waive the state's Eleventh Amendment immunity. *See Lapides,* 251 F.3d at 1375–78.

### 2. Marjorie Almand, Alison Mitchell, and Sandra Gibson

#### a. *Official Capacity*

■ Only Defendant Almand has been sued specifically in her official capacity,

but the following analysis applies equally to Defendants Mitchell and Gibson, assuming that Plaintiff also intended to sue them in their official capacities. All three are employees of the Bibb County Department of Family and Children Services.

The guiding principle here is that "Eleventh Amendment immunity also extends to a state official or employee sued in an official capacity as well as to other entities properly described as 'arms of the state.'" *Powell v. Department of Human Res.,* 918 F.Supp. 1575, 1578 (S.D.Ga.1996), *aff'd,* 114 F.3d 1074 (11th Cir.1997). The key question, then, is whether the Bibb County Department of Family and Children Services is a state agency or a county agency. The unequivocal answer to this question is that the Bibb County DFCS is a state agency for purposes of the Eleventh Amendment. *See Powell,* 918 F.Supp. at 1578–79 (recognizing that the DFCS is a state agency that is established in each county merely for administrative convenience); *Rayburn ex rel. Rayburn v. Hogue,* 241 F.3d 1341, 1343 n. 3 (11th Cir. 2001) (noting that DFCS is a branch of DHR). Thus, because Defendants Almand, Mitchell, and Gibson are state officials, they are immune from suit in federal court in their official capacities.

#### b. *Individual Capacity*

■ The GTCA clearly provides that state officials are not subject to suit or liability for torts committed while acting within the scope of their official duties. *See* O.C.G.A. § 50–21–25(a). Moreover, in a suit brought pursuant to the GTCA, the plaintiff must name the government entity for which the state official was acting and shall not name the state official individually. *See* O.C.G.A. § 50–21–25(b). Thus,

---

**2.** Plaintiff has not argued that some act of Congress has abrogated the state's Eleventh Amendment immunity specifically in the con-

text of Count One, nor is the Court aware of any such act.

Plaintiff may not maintain Count One against Defendants Almand, Mitchell, and Gibson in their individual capacities because the allegations contained therein concern actions that were obviously within the scope of their official duties.

### B. *Count Two—42 U.S.C.A. § 1983*

■ Count Two, as amended, claims that Rayshom was deprived of his rights under the Fifth, Eighth, and Fourteenth Amendments and that Defendants are liable for those deprivations under 42 U.S.C.A. § 1983. Defendants argue that Count Two fails to state a claim upon which relief can be granted.

■ Before addressing the merits of Count Two, the Court must note that the complaint contains another flaw common in civil rights complaints filed in this district: it alleges violations of constitutional rights that simply do not apply in the particular context. First, it is elementary constitutional law that the Due Process Clause of the Fifth Amendment applies only to conduct committed by officials of the federal government; it does not apply to state actors. *See Riley v. Camp*, 130 F.3d 958, 972 n. 19 (11th Cir.1997) (Tjoflat, J., dissenting from the denial of rehearing en banc). Because the complaint contains no allegations that federal actors were involved in Rayshom's injuries, the Fifth Amendment provides no basis for relief in this case. Second, because the Eighth Amendment generally applies only to those who have been convicted of a crime, *see Ingraham v. Wright*, 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), or to those in analogous circumstances, *see id.* at 669 n. 37, 97 S.Ct. 1401, it also provides no basis for relief in this case. There being no grounds for Plaintiff to allege that Rayshom's Fifth and Eighth Amendment rights were violated, Count Two can be based only on a violation of the Fourteenth Amendment. *See Taylor ex rel. Walker v. Ledbetter*, 818 F.2d 791, 797 (11th Cir.1987) (en banc) ("We believe the risk of harm is great enough to bring foster children under the umbrella of protection afforded by the fourteenth amendment.").

#### 1. Department of Human Resources

■ To the extent that Count Two asserts that Defendant DHR is liable for Rayshom's injuries, it must fail because states, state agencies, and state officials acting in their official capacities cannot be sued under § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983").

#### 2. Marjorie Almand, Alison Mitchell, and Sandra Gibson

##### a. *Official Capacity*

■ Like the claim against Defendant DHR, the official-capacity claims against Defendants Almand, Mitchell, and Gibson must also fail because states, state agencies, and state officials acting in their official capacities cannot be sued under § 1983. *See id.*

##### b. *Individual Capacity*

As the foregoing discussion illustrates, the only proper Defendants with respect to Count Two are Defendants Almand, Mitchell, and Gibson in their individual capacities. In their motion, Defendants Almand, Mitchell, and Gibson argue that Count Two fails to state a claim upon which relief can be granted because they are entitled to qualified immunity.

###### i. *Standard of Review*

■ The purpose of a Rule 12(b)(6) motion is to determine whether the plaintiff's complaint, or any part thereof, states

a legally sufficient claim for relief. A claim should be dismissed under Rule 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "A complaint is also subject to dismissal under Rule 12(b)(6) when its allegations—on their face—show that an affirmative defense bars recovery on the claim." *Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir.2001) (en banc).[3] The court's function is not to assess the veracity or weight of the evidence that might be offered in support of the complaint; instead, the court must merely determine whether the complaint is legally sufficient. *See Sherman ex rel. Sherman v. Helms*, 80 F.Supp.2d 1365, 1368 (M.D.Ga.2000). Thus, the facts as alleged must be accepted as true, and the court must construe all reasonable inferences in the light most favorable to the plaintiff. *See Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999) (per curiam). However, the court is not required to accept as true the plaintiff's conclusions of law. *See Solis–Ramirez v. United States Dep't of Justice*, 758 F.2d 1426, 1429 (11th Cir.1985). If the facts alleged in the complaint would allow the plaintiff to recover under any possible theory, the motion must be denied, regardless of whether they would allow recovery under the particular theory pleaded by the plaintiff. *See Linder v. Portocarrero*, 963 F.2d 332, 336 (11th Cir.1992).

When qualified immunity is asserted in a Rule 12(b)(6) motion, the complaint must be dismissed if,

> (1) from the face of the complaint, (2) [the court] must conclude that (even if a claim is otherwise sufficiently stated), (3) the law supporting the existence of that claim—given the alleged circumstances—was not already clearly established, (4) to prohibit what the government-official defendant is alleged to have done, (5) before the defendant acted.

*Marsh*, 268 F.3d at 1023. The liberal standards of Rule 8 normally guide the resolution of a Rule 12(b)(6) motion, but the Eleventh Circuit "has tightened the application of Rule 8 with respect to § 1983 cases [against government officials in their individual capacities] in an effort to weed out nonmeritorious claims." *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir.1998).[4] Thus, for a § 1983 action against a government official in his individual capacity to survive a Rule 12(b)(6) motion, the plaintiff must allege "some factual detail" so that the court can determine whether the defendant violated a clearly established right. *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir.1992).

#### ii. *Qualified Immunity Principles*

"Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including dis-

---

**3.** Qualified immunity is such an affirmative defense and must be pleaded by the public official in the answer or else it is waived. *See Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Skrtich v. Thornton*, 267 F.3d 1251, 1261 (11th Cir. 2001).

**4.** The Supreme Court has rejected a so-called heightened pleading standard in § 1983 actions against government entities, *see Leather-* *man v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 167–68, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), but the Eleventh Circuit continues to require heightened pleading in § 1983 actions against individually named government officials. *See GJR Invs., Inc.*, 132 F.3d at 1368 (holding that "the heightened pleading requirement [in § 1983 actions against government officials in their individual capacities] is the law of this circuit").

covery) and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lassiter v. Alabama A & M Univ., Bd. of Trs.,* 28 F.3d 1146, 1149 (11th Cir.1994) (en banc) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). To determine whether a public official is entitled to qualified immunity, the Eleventh Circuit requires district courts to apply a two-step burden-shifting analysis. First, the defendant bears the burden of proving that he was acting within the scope of his discretionary authority at the time the alleged violation occurred. *See Priester v. City of Riviera Beach,* 208 F.3d 919, 926 (11th Cir.2000). Second, if the defendant discharges this burden, the plaintiff then bears the burden of proving that the defendant's acts violated clearly established law of which a reasonable person would have known at the time the alleged violation occurred. *See id.*

■■■■ Plaintiff argues that Defendants Almand, Mitchell, and Gibson were not acting within the scope of their discretionary authority when the alleged violations occurred. The Court, however, disagrees. "To establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Harbert Int'l, Inc. v. James,* 157 F.3d 1271, 1282 (11th Cir.1998). To determine whether a defendant has made this showing, "a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Id.* (internal quotation marks omitted). Under this test, the Court has no doubt that the allegations contained in Count Two concern actions that were within the scope of the discretionary authority of Defendants Almand,

Mitchell, and Gibson. *See Powell v. Georgia Dep't of Human Res.,* 114 F.3d 1074, 1077 (11th Cir.1997) (holding that similar actions by employees of the Richmond County Department of Family and Children Services were discretionary, and summarily rejecting the plaintiff's argument to the contrary). Indeed, Defendants Almand, Mitchell, and Gibson would not have taken those actions except in furtherance of their employment responsibilities. Therefore, the sole question before the Court is whether Plaintiff has demonstrated that Defendants Almand, Mitchell, and Gibson violated clearly established law.

■■■■ A "necessary concomitant" to this question is "the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Thus, the Supreme Court requires district courts to use the following analytical framework for determining whether a plaintiff's allegations are sufficient to overcome qualified immunity: "[A] court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Conn v. Gabbert,* 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999); *see also Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2156–57, 150 L.Ed.2d 272 (2001); *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Under this approach, "[i]f a plaintiff has not sufficiently alleged a violation of *any* constitutional right, it is axiomatic that the plaintiff likewise has failed to allege the violation of a 'clearly established' right." *GJR Invs., Inc.,* 132 F.3d at 1367. Accordingly, the Court must determine initially whether Plaintiff has sufficiently alleged a violation

of Rayshom's Fourteenth Amendment rights. If the allegations in the complaint indicate that there was no underlying constitutional violation, then Defendants Almand, Mitchell, and Gibson are entitled to qualified immunity. *See Hartley v. Parnell,* 193 F.3d 1263, 1270–72 (11th Cir. 1999). If, on the other hand, the allegations in the complaint indicate that Defendants Almand, Mitchell, and Gibson violated Rayshom's Fourteenth Amendment rights, then the Court must proceed to determine whether the law was clearly established at the time of the alleged violation.

■■■■ "For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law." *Lassiter,* 28 F.3d at 1149 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). This means that "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Id.* at 1150. Because the law can be clearly established only by reference to the facts that confronted the defendant at the time he acted, "the facts relied upon as precedent are important. The facts need not be the same as the facts of the immediate case. But they do need to be materially similar." *Adams v. St. Lucie County Sheriff's Dep't,* 962 F.2d 1563, 1575 (11th Cir.1992) (Edmondson, J., dissenting), *approved en banc,* 998 F.2d 923 (11th Cir. 1993) (per curiam).

### iii. *Substantive Due Process*

■■■■ The primary thrust of Count Two is that Defendants Almand, Mitchell, and Gibson are liable under § 1983 for violating Rayshom's substantive due process rights. Essentially, Plaintiff alleges that Defendants Almand, Mitchell, and Gibson failed to exercise an affirmative duty to ensure that Rayshom was provided with a living environment that would protect his physical, mental, and emotional safety and well-being.

The Eleventh Circuit has held that two requirements must be satisfied to state a claim against a government official under § 1983 for failure to exercise an affirmative duty: "First, the failure to act must have been a substantial factor leading to the violation of a constitutionally protected liberty or property interest. Second, the official having the responsibility to act must display deliberate indifference." *Taylor,* 818 F.2d at 794 (citation omitted). Plaintiff has adequately pleaded both requirements in this case.

■■■■ With respect to the first requirement, the Eleventh Circuit has recognized that a child in foster care has a liberty interest in reasonably safe living conditions. *See id.* at 794–95 (citing *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982)). According to the Eleventh Circuit, "The state's action in assuming the responsibility of finding and keeping the child in a safe environment placed an obligation on the state to insure the continuing safety of that environment." *Id.* at 795. Thus, state officials responsible for foster placement may be liable under § 1983 if they deprive the foster child of that liberty interest. *See id.* at 797. Here, the complaint alleges that Defendants Almand, Mitchell, and Gibson deprived Rayshom of this liberty interest and that their gross neglect and deliberate indifference was a

substantial factor leading to the deprivation. Thus, the complaint satisfies the first requirement.[5]

 The fact that the first requirement has been satisfied "does not mean that every child in foster care may prevail in a section 1983 action against state officials based on incidental injuries or infrequent acts of abuse; only where it is alleged and the proof shows that the state officials were deliberately indifferent to the welfare of the child will liability be imposed." *Id.* In addition, liability will not attach unless the state official's failure to exercise an affirmative duty proximately caused the deprivation of the child's Fourteenth Amendment rights. *See id.* Here, the complaint alleges that (1) Defendants Almand, Mitchell, and Gibson were grossly negligent and deliberately indifferent to Rayshom's physical, mental, and emotional safety and well-being; (2) they knew or should have known that Rayshom was suffering physical, mental, and emotional abuse, but deliberately ignored it; and (3) their gross neglect and deliberate indifference proximately caused the deprivation of Rayshom's Fourteenth Amendment rights. As a result, the complaint satisfies the second requirement.

As the foregoing analysis demonstrates, Plaintiff has adequately pleaded the violation of a currently cognizable constitutional right. Therefore, the Court must now determine whether that right was clearly established at the time the alleged violation occurred.

 Fortunately, this is a rather simple inquiry. In *Taylor*, the Eleventh Circuit held that deliberate indifference by state officials to the safety and welfare of a child in foster care constitutes a violation of the child's substantive due process rights and is actionable under § 1983. Thus, the law that Plaintiff accuses Defendants Almand, Mitchell, and Gibson of violating has been clearly established since 1987, which was well before the conduct at issue in this case occurred. *See Rayburn ex rel. Rayburn v. Farnesi,* 70 F.Supp.2d 1334, 1348 (N.D.Ga.1999) (holding that *Taylor* itself clearly established the law), *vacated in part on other grounds,* 241 F.3d 1341 (11th Cir.2001); *Miracle ex rel. Miracle v. Spooner,* 978 F.Supp. 1161, 1174 (N.D.Ga.1997) (same). Moreover, the complaint satisfies the Eleventh Circuit's heightened pleading standard because it alleges facts in sufficient detail for the Court to conclude that the facts of this case are materially similar to the facts of *Taylor.* Consequently, the Court finds that pre-existing law (*Taylor*) establishes a bright-line rule that truly compels the conclusion that all reasonable officials in the circumstances confronted by Defendants Almand, Mitchell, and Gibson should have known that their conduct would violate the Due Process Clause of the Fourteenth Amendment. If, after discovery or at trial, Plaintiff cannot prove that Defendants Almand, Mitchell, and Gibson acted with deliberate indifference to Rayshom's safety and welfare, then they will be entitled to qualified immunity. At this stage of the proceedings, however, Plaintiff has adequately alleged facts that, if proved, indicate that Defendants Almand, Mitchell, and Gibson are not entitled to qualified immunity.

---

5. The Court recognizes that liberty interests protected by the Due Process Clause are subject to a balancing of interests. *See Taylor,* 818 F.2d at 795. Thus, societal interests may outweigh an individual's interests such that there is no violation of a substantive due process right. *See id.* The Eleventh Circuit's observation in *Taylor* is appropriate here: "Whether the child's claim constitutes a liberty interest protected by the due process clause when weighed against the demands of society will be determined at later stages in these proceedings." *Id.*

### iv. *Procedural Due Process*

■ Count Two also alleges that Defendants Almand, Mitchell, and Gibson violated Rayshom's procedural due process rights. Specifically, the complaint alleges that Defendants Almand, Mitchell, and Gibson, through gross neglect and deliberate indifference, failed to ensure Rayshom's well-being because they did not follow the requirements of Georgia's statutory scheme for the care of foster children, and that this failure proximately caused Rayshom's injuries.

■ In *Taylor*, the Eleventh Circuit examined this statutory scheme, which is titled the Children and Youth Act, *see* O.C.G.A. §§ 49–5–1 to –22 (1998 & Supp. 2001), and concluded that it "mandates that officials follow guidelines and take affirmative actions to ensure the well being and promote the welfare of children in foster care." 818 F.2d at 799. Thus, when state officials fail to follow the requirements of the Children and Youth Act, an injured foster child can state a claim under the Due Process Clause of the Fourteenth Amendment for the deprivation of a liberty interest in personal safety. *See id.* As the court explained,

> It is of no moment that the state officials are not charged in this case with affirmatively acting to harm this child. What the child is entitled to is the state's protection from harm. She is entitled to be protected in the manner provided by statute. It would be anomalous if the state, in allegedly acting to protect the child, could itself cause harm to the child by failing to assume the child's minimal physical safety. Failing to act may, under certain circumstances, be more detrimental than acting.

*Id.* at 800. Accordingly, the court held that the Children and Youth Act gives rise to a procedural due process claim. *See id.*

■ Subsequent to the Eleventh Circuit's decision in *Taylor*, however, the Georgia General Assembly enacted the Georgia Tort Claims Act. Defendants Almand, Mitchell, and Gibson argue that Plaintiff has not stated a claim for a violation of Rayshom's procedural due process rights because Rayshom may pursue a damages claim under the GTCA. As a general rule, "overlapping state remedies are generally irrelevant to the question of the existence of a cause of action under § 1983." *Zinermon v. Burch*, 494 U.S. 113, 124, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). For two of the three kinds of claims that may be brought under § 1983 for violations of the Due Process Clause of the Fourteenth Amendment—claims based on a deprivation of a right protected by a provision of the Bill of Rights that has been incorporated, and claims based on a deprivation of substantive due process—"the constitutional violation actionable under § 1983 is complete when the wrongful action is taken," which means that "[a] plaintiff ... may invoke § 1983 regardless of any state-tort remedy that might be available to compensate him for the deprivation of these rights." *Id.* at 125, 110 S.Ct. 975. However, for the third kind of claim—claims based on a deprivation of procedural due process—"the existence of state remedies *is* relevant in a special sense." *Id.* For this kind of claim,

> The constitutional violation actionable under § 1983 is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

*Id.* at 126, 110 S.Ct. 975. Thus, " 'only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise.' " *Cotton v. Jackson*, 216 F.3d 1328, 1330–31 (11th Cir.2000) (quoting *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir.1994) (en banc)). "This rule ... recognizes that the state must have the opportunity to 'remedy the procedural failings of its subdivisions and agencies in the appropriate fora-agencies, review boards, and state courts' before being subjected to a claim alleging a procedural due process violation." *Id.* at 1331 (quoting *McKinney*, 20 F.3d at 1560).

The Supreme Court has held that, when a state official's random and unauthorized actions deprive a person of a liberty interest protected by the Fourteenth Amendment, a state may satisfy its procedural due process obligations by providing an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 530–33, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor*, 451 U.S. 527, 538–41, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Assuming that the conduct of Defendants Almand, Mitchell, and Gibson, as alleged in the complaint, deprived Rayshom of his procedural due process rights created by the Children and Youth Act, it must certainly be described as random and unauthorized. Indeed, it is inconceivable that the state would authorize its officials to violate a foster child's constitutional rights or that the state could foresee that they would do so absent any prior suggestive conduct. Thus, this claim turns on the adequacy of the post-deprivation remedies available under Georgia law. Because the Court finds that the GTCA provides a constitutionally adequate post-deprivation remedy,[6] Rayshom's procedural due process rights were not violated. Essentially, there was no procedural due process violation in this case because the availability of relief under the GTCA means that any potential violation was not complete. There being no violation of Rayshom's procedural due process rights, Defendants Almand, Mitchell, and Gibson are entitled to qualified immunity on this claim.

The Court does not lightly ignore the precedent established in *Taylor* on this point. However, because the GTCA had not been enacted when the Eleventh Circuit decided *Taylor*, the Court concludes that the portion of *Taylor* dealing with procedural due process cannot withstand scrutiny under the *Hudson/Parratt* rule in light of the Georgia General Assembly's enactment of the GTCA in 1992. In fact, the Eleventh Circuit concluded its opinion in *Taylor* with the following observation: "Since the child's claim ... is a procedural due process claim, the state of Georgia may alter its statutes and ordinances in such a way as to change or eliminate the expectation on which this child had the right to rely." 818 F.2d at 800. The Georgia General Assembly did just that when it enacted the GTCA in 1992. As a result, Rayshom's right to rely on the Children and Youth Act for procedural due process was eliminated, and he is required to seek relief under the GTCA rather than the procedural component of the Due Process Clause of the Fourteenth Amendment.

---

**6.** The Court notes that the adequacy of the GTCA is not affected by the possibility that Defendants Almand, Mitchell, and Gibson may be entitled to state-law immunity. *See Rittenhouse v. DeKalb County*, 764 F.2d 1451, 1457–59 (11th Cir.1985). Nor is the adequacy of the GTCA affected by the fact that it may not provide Plaintiff with the same relief that is available under § 1983. *See Parratt*, 451 U.S. at 543–44, 101 S.Ct. 1908.

**1370**

### III. CONCLUSION

With respect to Count One, the GTCA does not permit Plaintiff to proceed against Defendants Almand, Mitchell, and Gibson in their individual capacities, and the Court otherwise lacks subject-matter jurisdiction by virtue of the Eleventh Amendment. Thus, the Court must determine whether to simply dismiss Count One or remand it to state court. Plaintiff argues that the Court should remand the entire case because remanding only part of the case is "at best disingenuous" and "nothing short of galling." Regardless of how disingenuous or galling a partial remand might be to Plaintiff, the Supreme Court has authorized district courts to partially remand cases when faced with an assertion of Eleventh Amendment immunity after removal. *See Wisconsin Dep't of Corr. v. Schacht,* 524 U.S. 381, 392–93, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998); *Lapides,* 251 F.3d at 1377–78 (discussing *Schacht*). Accordingly, Count One is remanded to the Superior Court of Bibb County.

With respect to Count Two, Plaintiff may pursue a substantive due process claim under the Fourteenth Amendment against Defendants Almand, Mitchell, and Gibson in their individual capacities. Plaintiff has failed to state a claim against any of the other Defendants. Plaintiff has also failed to state a claim for violations of the Fifth Amendment, the Eighth Amendment, and the procedural component of the Due Process Clause of the Fourteenth Amendment.

Accordingly, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART.**