Ashleigh DANIELLE, By and Through her mother and next friend and through Richard Komando, attorney ad litem, Plaintiff,

v.

Albert ADRIAZOLA, Susan Worsley, Loletrice Fyffe, Kathleen Kearney, Children's Home Society, Inc., and Kids in Distress, Inc., Defendants.

No. 03–61076–CIV.

United States District Court, S.D. Florida.

Sept. 4, 2003.

Roy D. Wasson, Coral Gables, John Lawlor, Lawlor Winston & Justice, Fort Lauderdale, FL, Karen A. Gievers, Tallahassee, FL, Richard Christian Komando, Fort Lauderdale, FL, for Plaintiff.

Pamela Lynn Lutton–Shields, Diane L. Guillemette, Attorney General Office, Department of Legal Affairs, Tallahassee, FL, Kenneth John Carusello, Kenneth J. Carusello, Coral Gables, Geoffrey Bennett Marks, Billbrough & Marks, Miami, FL, for Defendants.

### ORDER DENYING DEFENDANTS' MOTION TO DISMISS DEFENDANTS ADRIAZOLA, FYFFE, WORSLEY AND KEARNEY

HUCK, District Judge.

THIS CAUSE is before the Court upon the Second–Amended Motion to Dismiss Defendants Adriazola, Fyffe, Worsley, and Kearny, filed on June 24, 2003 [DE # 6] ("Second–Amended Motion"). These Defendants move to dismiss on several grounds, including failure to state a claim upon which relief can be granted, qualified immunity, and Plaintiff's lack of capacity to sue. Plaintiff contests each of these arguments, contending the Complaint sufficiently states a claim under 42 U.S.C. § 1983 for violation of Ashleigh Danielle's substantive due process rights under the Fourteenth Amendment, that defendants

are not entitled to qualified immunity, and that this suit has been properly brought through Ashleigh Danielle's mother as next friend, satisfying the requirement for capacity. The Court finds that Plaintiff has adequately stated a claim and that these defendants are not entitled to dismissal under qualified immunity on this record.

## Jurisdiction

This Complaint was originally filed in the Florida Circuit Court of the Seventeenth Judicial Circuit in Broward County on December 31, 2002. On June 2, 2003, Defendants Adriazola, Fyffe, and Worsley removed the action to this Court pursuant to 28 U.S.C. § 1441 on the grounds that the suit against those three defendants and Defendant Kearney involves a federal civil rights claim brought pursuant to 42 U.S.C. § 1983, thus giving this Court federal question jurisdiction over the action. The removal motion represents that Defendants Kids in Distress, Inc., Adraizola, Fyffe, and Worsley were served on May 2, May 5, May 7, and May 10, 2003, respectively, and that Defendant Kearney and Children's Home Society, Inc., had not been served as of filing of the removal notice. The notice of removal was filed within thirty days of receipt of service by any of the defendants. *See* 42 U.S.C. § 1446(b). Neither Plaintiff nor Defendants presently challenge this Court's jurisdiction over the subject matter of the Complaint.[1]

## Facts

The crux of Defendants argument in this motion is that Plaintiff has failed to state a claim for relief against the state officials and, in particular, against Defendant Kearny. The Complaint alleges that Defendants Albert Adriazola, Susan Worsley, Loletrice Fyffe, and Kathleen Kearny violated her constitutionally protected due process right to be kept safe and free from harm while in the foster care custody of the Florida Department of Children and Families ("DCF"). Complaint at ¶¶ 6, 8, 22. According to the Complaint, Plaintiff was a two-year-old minor in 1998 when she was taken into the custody of the DCF and placed at the Children's Home Society, Inc. ("CHS"), on emergency shelter status for a period of approximately 1000 days. *Id.* at ¶¶ 3, 6. The Complaint alleges that Plaintiff deteriorated psychologically and was subjected to abuse by other children while placed at CHS. *Id.* at ¶ 3. Plaintiff states that Defendants Fyffe and Worsley were counselors at DCF, that Defendant Adriazola was the DCF supervisor who had direct responsibility over the Plaintiff, and that Defendant Kearny served as Secretary for the Department of Children and Families from January 1999 until August 2002, and that, as such, each of these Defendants acted under the color of state law. *Id.* at ¶¶ 4–5.

In Count III, the Complaint alleges that Defendants Adriazola, Fyffe, Worsley, and Kearney committed civil rights violations against the Plaintiff, allegedly partially because of their dislike for or concern about one or both of Plaintiff's parents. *Id.* at ¶¶ 16–23. Specifically, Defendants Adriazola, Worsley, and Kearney allegedly "did nothing to protect" the Plaintiff even though "each had actual knowledge that Plaintiff was not safe in the CHS shelter, knew that Plaintiff was deteriorating and lacking her ability to function normally,"

1. Defendants do suggest a possible ground for dismissal due to Plaintiff's failure to attempt service within 120 days of filing the Complaint in state court, but they state that they will not pursue this claim in this motion. Second Amended Motion at 18–19. Although Plaintiff responded briefly to this statement in a footnote, the Court will not consider this ground for dismissal since it has not been properly raised by these Defendants.

and "knew that episodes of abuse of the Plaintiff by others in the shelter were occurring." *Id.* at ¶ 19. The Complaint further alleges that Defendant Kearney personally intervened in the Plaintiff's case and, with the aid of these other three Defendants, kept Plaintiff in "an unsuitable dangerous placement and kept secret the information about the abuses suffered by Plaintiff while in the Department's custody." *Id.* at ¶ 21. Plaintiff demands various categories of damages for the permanent injuries suffered by Plaintiff as a result of Defendants' failure to protect her right to be safe and free from harm while in state custody. *Id.* at ¶ 24.

### Discussion

### I. Plaintiff's Capacity to Sue

In their motion to dismiss, Defendants raise the issue of Plaintiff's lack of capacity, arguing that this suit has been improperly brought on her own behalf rather than by a next friend as required by procedural rules. The Federal Rules of Civil Procedure establish the manner in which an infant must proceed in a civil suit, allowing that an infant's representative may sue on behalf of the infant, and, if no such representative has been duly appointed, mandating that the court shall appoint a guardian ad litem. Fed. R. Civ. Pro. 17(c). In this case, the Ashleigh Danielle's complaint has been filed both through her mother as next friend and through Richard Komando, the child's attorney ad litem. Because the relationship between the various individuals purporting to represent the Plaintiff's interests in this action is unclear and because these two representatives for the child may have conflicting interests, the Court raised the issue in a telephonic status conference on August 25, 2003. During that conference, Plaintiff's counsel

agreed to determine the manner in which to proceed such that the Plaintiff will be properly represented pursuant to Rule 17(c). Since this requirement is procedural and does not create any jurisdictional bars that require immediate resolution, the Court will await a response on this question before taking any further action.[2]

### II. Section 1983 Claims and Qualified Immunity

 An action brought under 42 U.S.C. § 1983 requires the deprivation of a federally protected right by a person acting under color of state law. See *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Whitehorn v. Harrelson*, 758 F.2d 1416, 1419 (11th Cir. 1985). However, individual government employees acting within the scope of their official duties enjoy the defense of qualified immunity unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court has emphasized that a ruling on qualified immunity must be made as early in the proceedings as possible, since it is an "immunity from suit rather than a mere defense to liability, . . . an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). In ruling on qualified immunity, a court must first determine whether the complaint, taken in the light most favorable to the plaintiff, alleges facts which, if proven, would show that the officer violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200–01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If no constitutional

---

**2.** Plaintiff's counsel shall file by September 18, 2003, a notice explaining the manner in which Plaintiff will be represented so Defen-

dants can raise any objections in their answer.

right could have been violated, then there is no need to proceed to the second step. *Id.* Thus, as other courts have noted, a determination on a motion for failure to state a claim and the first step of the qualified immunity analysis merge when presented in a Rule 12(b)(6) motion. *GJR Investments, Inc. v. County of Escambia, Florida,* 132 F.3d 1359, 1366 (11th Cir. 1998). If a court finds that a constitutional right was violated, based on "a favorable view of the parties' submissions," then the court must determine whether that right was clearly established in light of the specific context of the case. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. An executive branch officer is entitled to qualified immunity if the law did not clearly put the officer on notice that the conduct in which he or she engaged would be clearly unlawful. *Id.* at 202, 121 S.Ct. 2151.

In this case, Plaintiff claims that she had a due process right to be "kept safe and free from harm while in foster care." Complaint at ¶ 8. According to the Complaint, these Defendants violated this right because they failed to protect her in the face of knowledge that, among other things, she was being abused by other children at the Children's Home Society facility.[3] *Id.* at ¶ 19. However, Defendants argue that the allegations of Plaintiff's Complaint are "conclusory and fail to establish that the conduct of each Defendant violated a constitutionally protected right of the Plaintiff." Defendants' Reply at 2. Defendants argue that, rather, the only laws Plaintiff claims were violated are

state rules, which does not properly state a claim under § 1983 for violation of a constitutional right or federal law. Second–Amended Motion at 2, 3–4. Defendants further contend that, even if Plaintiff does state a claim under § 1983, that violation of these state rules was not clearly established, and, therefore, the Defendants are entitled to qualified immunity. *Id.* at 17–18. Finally, the Defendants claim that, in any event, Defendant Kearney should be dismissed from this suit because Plaintiff's claims are based on *respondeat superior* liability, which does not state a claim under § 1983. *Id.* at 16–17. For the reasons below, the Court finds that Plaintiff has adequately alleged a violation of a constitutional right by each of these four Defendants, that the constitutional right was clearly established at the time of Ashleigh Danielle's alleged injury, and that these Defendants are, therefore, not entitled to qualified immunity at this time.

### A. *Constitutional Right*

The first question, then, is whether the Complaint states a claim for a violation of any constitutional right. To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama,* 30 F.3d 117, 120 (11th Cir.1994) (*quoting Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Determining the propriety of granting a motion to dismiss

---

**3.** Some allegations of the Complaint also hint that Plaintiff intended to raise a procedural due process claim. *See, e.g.,* Complaint at ¶ 21 (noting that Defendant's actions constituted an effort to "prevent her from having meaningful access to the courts"). A considerable portion of Defendants' motion addresses this possible cause of action. In addition, the Complaint claims that Plaintiff's "constitutionally protected familial association

rights" were violated. Complaint at ¶ 21. However, neither of these issues was briefed in Plaintiff's response to the motion to dismiss. During a status conference on August 25, 2003, Plaintiff represented that she would not press for protection of either of these rights at this time, but, rather, would seek leave to amend the Complaint at a later date if either proves to be a viable ground for relief.

requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir.1994). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *See Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir.1985) (citations omitted); *Jackam v. Hospital Corp. of America Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir.1986). "[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed on grounds that it fails to state a claim upon which relief can be granted. *M/V Sea Lion v. Reyes*, 23 F.3d 345, 347 (11th Cir.1994) (citations omitted). Nevertheless, to survive a motion to dismiss, plaintiff must do more than merely "label" his claims. *Blumel v. Mylander*, 919 F.Supp. 423, 425 (M.D.Fla.1996). Moreover, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993).

▪ In addition, in the context of § 1983 actions, the Eleventh Circuit has imposed an elevated pleading requirement, particularly for those cases where officials may have a qualified immunity defense, instructing that plaintiffs must "allege with some specificity the facts which make out its claim." *GJR Investments*, 132 F.3d at 1367 (citing *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir.1992)). Thus, in this context, "[m]ore than mere conclusory notice pleading is required . . . . [A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." *Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir.1984). Although some recent district court decisions have questioned the constitutionality of this heightened standard,[4] the Eleventh Circuit has reiterated this additional pleading requirement as recently as this year.

4. In 1994, the Supreme Court held that heightened pleading could not be required of plaintiffs in § 1983 claims where a municipality was the defendant, but left open the question of "whether our qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166–67, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). As such, in *GJR Investments*, the Eleventh Circuit continued applying heightened pleading in § 1983 cases involving individual defendants. 132 F.3d at 1368. Some district courts in this circuit have questioned the constitutionality of heightened pleading even in the individual context based on two recent Supreme Court decisions. *See, e.g., Palisano v. City of Clearwater*, 219 F.Supp.2d 1249, 1258 n. 5 (M.D.Fla.2002), *aff'd*, 62 Fed.Appx. 320, 2003 WL 678350 (11th Cir.2003); *Scott v. Estes*, 60 F.Supp.2d 1260, 1271 (M.D.Ala.1999); *Helton v. Hawkins*, 12 F.Supp.2d 1276, 1280–81 (M.D.Ala.1998). Specifically, in 1998, the Supreme Court struck down a requirement imposed by the D.C. Circuit in § 1983 cases requiring clear and convincing evidence of improper motive on a summary judgment motion and, in a 2002 decision, held that requiring heightened pleading is not permissible in Title VII employment discrimination cases. *See Crawford–El v. Britton*, 523 U.S. 574, 594, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). In both cases, the opinions suggest that amendment to the federal rules is the only proper method of altering the federal rules' liberal pleading requirement and point out that other remedies for inadequate pleading are provided by the rules, such as a motion for a more definite statement under Rule 12(e), a trial judge's use of discretion to focus and limit discovery, and summary judgment. *Crawford -El*, 523 U.S. at 594–601, 118 S.Ct. 1584; *Swierkiewicz*, 534 U.S. at 514–15, 122 S.Ct. 992.

*See Gonzalez v. Reno,* 325 F.3d 1228, 1235 (11th Cir.2003). Thus, both the regular Rule 12(b)(6) standard and this heightened pleading requirement must be applied when evaluating a § 1983 claim where the defendants have offered a qualified immunity defense. *GJR Investments,* 132 F.3d at 1367.

 As to the constitutional right alleged here, in *Taylor v. Ledbetter,* an en banc opinion, the Eleventh Circuit held that a child involuntarily placed in foster care has a liberty interest under the Fifth and Fourteenth Amendments to be "free from the infliction of unnecessary pain . . . and the fundamental right to physical safety." 818 F.2d 791, 794 (11th Cir.1987) (en banc). The court noted that, although there is generally no constitutional right to be protected by the state against the actions of other private citizens, such a right can arise in the context of a special custodial relationship assumed by the state. *See id.* at 794–95 (citing *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982)). The Eleventh Circuit then held that the state's involuntary placement of a child in foster care creates such a relationship. *Taylor,* 818 F.2d at 797–98. Thus, state officials can be charged under 42 U.S.C. § 1983 with failing to exercise an affirmative duty created by this special foster care relationship if (1) the failure to act is "a substantial factor leading to the violation of a constitutionally protected liberty or property interest," and (2) "the official having the responsibility to act . . . display[s] deliberate indifference." *Id.* at 794. Deliberate indifference requires proof of three components: "(1) subjective knowledge of a risk of serious harm, (2) disregard of that risk, (3) by conduct that is more than mere negligence." *Roes v. Florida Department of Children & Family Services,* 176 F.Supp.2d 1310, 1318 (S.D.Fla.2001) (citing *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir.1999)). The Court recognized

that "[a] child abused while in foster care, in order to successfully recover from state officials in a section 1983 action, will be faced with the difficult problem of showing actual knowledge of abuse or that agency personnel deliberately failed to learn what was occurring in the foster home." *Id.* at 796.

### 1. *Defendants Adriazola, Worsley, and Kearney*

 Plaintiff here has sufficiently pled a constitutional right and alleged facts which, giving Plaintiff the benefit of all reasonable inferences, would, if proven, establish a violation of that right with respect to Defendants Adriazola, Worsley, and Kearney. One justification for the heightened pleading requirement is that some factual detail is necessary in order to "see that the allegedly violated right was clearly established when the allegedly wrongful acts occurred." *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1485 (11th Cir.1992). Courts have also "repeatedly condemned" pleadings that "allege[ ] violation of general or abstract constitutional rights." *Omar v. Lindsey,* 334 F.3d 1246, 1251 (11th Cir.2003) (adopting Southern District of Florida Court's opinion in whole). The Eleventh Circuit further warned district courts that they may not "infer claims other than those that plainly appear on the face of the complaint to defeat a defense of qualified immunity." *GJR Investments,* 132 F.3d at 1369. Otherwise, a plaintiff could defeat qualified immunity merely through a "shotgun pleading," in which "the complaint presents scores of allegations regardless of their relevance and incorporates them in their entirety into several counts asserting discrete claims for relief, each of which contains several references to haphazardly described constitutional 'rights.'" *Id.* at 1368.

This Complaint does not suffer from these infirmities. Rather, Plaintiff has "identified the defendants who were personally involved in [her] care" and has "alleged acts upon which the alleged constitutional violation is based .... More specificity can be developed as the case proceeds." *Kyle v. Chapman*, 208 F.3d 940, 944 (11th Cir.2000). The constitutional right is clearly alleged: the "constitutionally protected due process right to be kept and free from harm while in foster care." Complaint at ¶ 8. This clear statement of a specific, concrete right gave Defendants sufficient notice of the violation being claimed for them to determine whether such a right was clearly established at the time of the alleged act. The Complaint further alleges, essentially, that these three Defendants were deliberately indifferent to Plaintiff's rights and that their deliberate indifference was the proximate cause of injury to the child, thus stating the requirements for recovery in a failure to act case. Plaintiff puts forward sufficient alleged facts that, due to each Defendant's position within the Department of Children and Families, would prove that each of these owed Plaintiff a duty of care. The Complaint claims these three Defendants knew leaving young children in emergency shelter with shift staff is detrimental to their health and that they each had actual knowledge that the Plaintiff was not safe at CHS, that she was deteriorating, that there was no child-specific safety plan, and that she was being abused by others in the shelter. Complaint at ¶¶ 17–21. Plaintiff states that, nonetheless, these Defendants did not affirmatively act to remove her from this harmful placement, in fact keeping the fact of her abuse secret, thus, proximately causing additional injuries due to her continued stay at the facility. *Id.* at ¶ 21. These allegations sufficiently suggest that these Defendants were subjectively aware of the risks and that they were more than merely negligent in ignoring that risk, thus stating a claim under the deliberate indifference standard.

■ Although Defendant cites cases supporting that Plaintiff must prove a causal connection between an official's acts or omissions and the constitutional violation, *see* Second–Amended Motion at 6, at this point in the case, the Plaintiff must merely allege such a causal connection. The Plaintiff here has done that. *See* Complaint at ¶¶ 21–22. Defendants further contend that these allegations are not sufficiently specific to state a cause of action because she has "lumped the defendants together and covered them with a general 'knew' and without sufficient detail to show how each defendant violated Plaintiff's constitutional rights." Defendants' Reply at 2. In response to that argument, assuming Plaintiff can prove her allegations, the simple fact that these Defendants knew of the abuse, yet failed to act to ameliorate it, would explain how they violated Plaintiff's right in light of their special relationship to the Plaintiff which created an affirmative obligation to act. Defendants argument that the Complaint does not sufficiently make allegations against each individual defendant is similarly without merit. As the Eleventh Circuit has stated, "[t]he fact that defendants are accused collectively does not render the complaint deficient" where "[t]he complaint can be fairly read to aver that all defendants are responsible for the alleged conduct." *Kyle v. Chapman*, 208 F.3d 940, 944 (11th Cir.2000). Thus, here, just because the Complaint discusses these three Defendants' knowledge together does not doom the Complaint since the claims against each defendant can be determined from the collective allegations.

Defendants also contend that the "harms" Plaintiff suffered are not sufficiently particularized and that, in any event, a child taken into the foster care

system by the state is not entitled to "optimal" placement and is only entitled to "reasonable safety." Defendants' Reply at 2. Case law does establish that a § 1983 action based on "incidental injuries or infrequent acts of abuse" are insufficient to state a claim, and that the liberty interest here is in *"reasonably* safe living conditions." *Taylor,* 818 F.2d at 795, 797 (emphasis added). However, viewed in the light most favorable to the plaintiff, these allegations must be read as claims of frequent abuse and steady psychological decline during the period she was placed in the emergency shelter. Even under the heightened pleading standard, the Plaintiff need not include a complete list of specific instances of abuse or detailed descriptions of injuries in order to state a claim, and, as such, she has adequately particularized her statement of injury for the purposes of the complaint. Further, again under a favorable review of the allegations, the Plaintiff's claim here is not merely that her care was not optimal, but rather that the Defendants failed to uphold their duty of providing that degree of reasonable safety guaranteed by the Fourteenth Amendment when they allowed abuse and Plaintiff's psychological decline to continue even after they had actual knowledge of it.

■ Defendants use a considerable portion of their motion pointing out that Chapter 39 of the Florida Statutes has established elaborate procedures giving the state circuit courts primary responsibility for overseeing foster care and arguing that this Plaintiff was not denied these procedural protections. Defendants' Second–Amended Motion at 7–16.[5] Defendants go too far when they claim that the Florida circuit courts' authority under Chapter 39 also provides an adequate defense to Plaintiff's allegations of deliberate indifference by these executive branch employees. Second–Amended Motion at 16. Defendants argue that this statute creates a system whereby the Florida courts have the primary responsibility for assuring the health and safety of foster children, and that these courts have been given broad powers in order to enforce that right, including the authority to investigate concerns about the safety of a child's placement and the ability to order the DCF to develop a plan to protect and provide for the welfare of a foster child if the court believes the department is failing to do so. *See* Defendants' Second–Amended Motion at 8–15. However, the mere existence of these procedural protections created by state statute does not relieve the Department of Children and Families from its constitutional obligation, clearly set out in *Taylor v. Ledbetter,* to protect the substantive due process rights of children in its custody to be free from "gross mistreatment and abuse." 818 F.2d at 797. That case found that the executive officials, not the circuit courts, were the parties with a special relationship required to keep foster children entrusted to their custody physically safe—it did not require a circuit court to intervene before a foster child's right can be found to have been violated by a member of the executive branch.[6] As

---

5. As discussed in a prior footnote, Defendants arguments here appear primarily to be a response to hints that Plaintiff was attempting to state a procedural due process claim which, in the August 25, 2003 status conference, Plaintiff's counsel conceded she would not pursue at this time.

6. Moreover, Defendants discussion strongly suggests the DCF retains primary authority over the placement of foster children and

responsibility for their day-to-day care, with the court's powers in this respect somewhat limited. For example, the courts "cannot tell the department where to place a child but can place limits on [its] discretion" and, when confronted with an executive official who is not acting in the best interest of the child, the court's remedies appear to be limited to requiring the DCF of develop plans to improve the child's condition, with the remedy of con-

such, Plaintiff has adequately stated a claim against these three Defendants and has properly alleged violation of a recognized constitutional right.

### 2. *Defendant Kearney's Supervisory Liability*

 Defendant Kearney further argues that she cannot be held liable in this action because "she is being sued merely because of her supervisory position as former secretary of DCF," citing cases which establish that a defendant in an action brought under 42 U.S.C. § 1983 cannot be held liable under a theory of *respondeat superior* liability. Second–Amended Motion at 16. Supervisory liability can be found either "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." *Gonzalez v. Reno,* 325 F.3d 1228, 1234 (11th Cir.2003) (quoting *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir. 1990)); *see also Rogers v. Evans,* 792 F.2d 1052, 1058–59 (11th Cir.1986). A causal connection can be established if a history of widespread abuse puts the supervisor on notice of the need to take corrective action, or if "the supervisor directed the subordinates to act unlawfully or knew the subordinates would act unlawfully and failed to stop them from doing so." *Id.*

In this case, Defendant Kearney is incorrect when she claims Plaintiff's theory of liability is based on *respondeat superior* since Plaintiff clearly alleges that Defendant Kearney was personally involved and had personal knowledge of this child's condition and care. Defendant Kearney allegedly had personal knowledge that Plaintiff was not safe at the CHS shelter, that she was deteriorating, and that she was being abused by other children at the center. Complaint at ¶ 19. The Complaint further alleges that Defendant Kearney personally intervened in Ashleigh Danielle's case and that Defendant Kearney's involvement was a proximate cause of the child's remaining at CHS rather than being returned to the custody of her parents. *Id.* at ¶ 21. The Court expresses no opinion on whether proof of these allegations will be forthcoming, but, at this point, the Plaintiff's allegations are sufficient to state a claim of personal involvement and to survive a Rule 12(b)(6) motion. *See Rhodes–Courter v. Thompson,* 252 F.Supp.2d 1359 (M.D.Fla. 2003) (refusing to dismiss because plaintiff's allegation were "predicated on the supervisors' personal actions or inactions"); *"John J." v. Adams,* No. 01–CV–2118–T–24, 2002 WL 31986855, at *6 (M.D.Fla., Nov. 27, 2002). Therefore, Defendant Kearney's motion to dismiss for failure to state a claim under § 1983 against her is denied.

### 3. *Defendant Fyffe*

 Unlike the other three defendants, the only allegation against Defendant Fyffe, who is described as a counselor with DCF, is that she, along with the other three Defendants—due to their dislike of or concerns about Plaintiff's parents—failed in providing for the Plaintiff's safety and proper development, kept Plaintiff "illegally in an unsuitable dangerous placement," and "kept secret the information about the abuses suffered by Plaintiff while in the Department's custody." Complaint at ¶ 21. The Complaint alleges that these actions harmed Plaintiff and "tr[ied] to prevent her from having meaningful access to the courts." *Id.* While these allegations are more scant than those

---

tempt proceedings, injunctions, or other equitable relief reserved only for instances where the officials continue to neglect the child.

Defendants' Second–Amended Motion at 14–15.

made against the other three Defendants, they are still sufficient to state a claim for violation of a constitutional right. Although the Complaint does not specifically allege that Defendant Fyffe had personal knowledge of abuse, the reasonable inference from the claim that she "kept secret the information about the abuses" is that she must have actually known of the abuse, as well. The Complaint alleges that these actions resulted in harm, thus satisfying the requirement that Plaintiff allege proximate causation. Further, trying to cover-up instances of abuse would be an affirmative act that could serve as more convincing evidence of causation than mere deliberate indifference based on actual knowledge. As such, the Court finds that Plaintiff has sufficiently stated a claim against Defendant Fyffe for a constitutional violation.

## B. *Clearly Established Law*

 Having found that Plaintiff has stated a cause of action and alleged violation of a constitutional right, the next step in determining whether these Defendants are entitled to qualified immunity is to decide whether the law regarding that constitutional right was clearly established at the time of the alleged violation. A constitutional right will be clearly established if it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citation omitted). Thus, for the illegality of conduct to be clearly established, the case is not required to be "fundamentally similar" to previous cases, nor must it present "materially similar" facts. *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct.

2508, 153 L.Ed.2d 666 (2002). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.*

Here, the case law prior to 1999, the year the alleged violation began, clearly established a child's constitutional right to protection and care while in the foster care system. *Taylor v. Ledbetter* was decided in 1987, first clearly identifying the constitutional right asserted here. In *Taylor*, the child was placed in a foster home where she was beaten so severely by the foster mother that she was rendered comatose. 818 F.2d at 792–93. The court found that the Plaintiff adequately stated a claim by alleging that county officials had been grossly negligent when placing the child in that home because they failed to adequately investigate the fitness of the placement, because they knew or should have known that the foster mother was unfit, because they failed to adequately supervise and inspect, and because they failed to obtain complete medical records. *Id.* Taylor set out the more general rule by quoting a Second Circuit opinion which stated:

> Defendants may be held liable under § 1983 if they, or in the case of an agency, its top supervisory personnel, exhibited deliberate indifference to a known injury, a known risk, or a specific duty and their failure to perform that duty was a proximate cause of plaintiff's deprivation of rights under the Constitution.

*Taylor*, 818 F.2d at 797 (quoting *Doe v. New York City Department of Social Services*, 649 F.2d 134, 145 (2nd Cir.1981)). Since *Taylor* was decided, several courts in this circuit have found, on varied but similar fact patterns, that the *Taylor* decision clearly established the right of a custodial minor to physical safety and freedom from infliction of unnecessary pain.

*See Omar v. Lindsey,* 243 F.Supp.2d 1339, 1344–45 (S.D.Fla.), *aff'd,* 334 F.3d 1246 (11th Cir.2003); *"John J." v. Adams,* No. 01–CV–2118T–24, 2002 WL 31986855 (M.D.Fla. Nov. 27, 2002); *Roes v. Florida Department of Children and Family Services,* 176 F.Supp.2d 1310, 1321 (S.D.Fla. 2001); *McCall v. Department of Human Resources,* 176 F.Supp.2d 1355, 1366–67 (M.D.Ga.2001).

The facts, as stated in this Complaint, are sufficiently similar to *Taylor* to demonstrate that the law was clearly established in 1999. The Complaint makes out allegations that these Defendants failed to adequately supervise and investigate and failed to exercise their affirmative duties despite actual knowledge of abuse. Although there are some factual differences between *Taylor* and this case, they are not sufficiently great that they demonstrate that Defendants were not on objectively reasonable notice of their duty. "As the Supreme Court explained in Hope . . ., our constitutional jurisprudence is not so bereft of good sense and flexibility that decisions in one case do not apply under similar but nevertheless different facts in another." *Omar v. Lindsey,* 334 F.3d 1246, 1250 (11th Cir.2003) (adopting District Court's opinion). Perhaps the greatest difference between this case and *Taylor* is that the alleged abuse was inflicted by other children in state custody, rather than by a foster parent. However, this difference is not sufficient to overcome the clear directive of *Taylor* that state officials may not, through deliberate indifference, fail to protect a foster child in state custody from a known danger. Moreover, in early 2000, during the period of this alleged violation, another judge in this court found that Plaintiff stated a claim that could survive a Rule 12(b)(6) motion by alleging sexual abuse by another child in a foster home. *See* Order Denying Defendants' Motion to Dismiss, *Ward v. Feaver,* No. 99–6745–CIV, 2000 WL 34025227 (S.D.Fla. Feb. 29, 2000).[7] Rejecting the argument that the constitutional right should not extend to this fact pattern because the child was harmed not by a foster parent, but by another foster child outside the foster home premises, the judge held that the state has a duty not to place the child in a "snake-pit," and "whether the venomous snake is an abusive foster parent, a fellow foster child, a third-party rapist, or even herself is immaterial." *Id.*

Defendants, nonetheless, argue that the law was not clearly established at the time of these alleged events. However, they focus in their motion on whether violation of state rules can state a claim and do not substantively address whether Plaintiff has stated a constitutional violation under *Taylor v. Ledbetter.* See Second–Amended Motion at 17–18. As such, since the Court has found that Plaintiff has stated a cause of action on these constitutional grounds, the Defendants' arguments regarding whether the law was clearly established does not address the critical issue in this case. Regardless of whether any violation of state rules was clearly established, the discussion above demonstrates that the constitutional right clearly was. Thus, for the foregoing reasons, reasonable officials in these alleged circumstances should have known that their failure to act would violate Plaintiff's substantive due process rights, and they are not entitled to qualified immunity. Defendants may still be entitled to qualified immunity at a later stage of the proceedings if Plaintiff's are unable to prove the allegations of the Complaint. *See McCall v. Department of Hu-*

---

7. Although this case was not published, the defendants in that case were all employees of the state, mostly of the DCF, the same department the Defendants here were associated with.

*man Resources,* 176 F.Supp.2d 1355, 1367 (M.D.Ga.2001).

### Conclusion

Accordingly, after careful review of the allegations of the Complaint and being otherwise fully advised, for the reasons stated above, it is

ORDERED AND ADJUDGED that Defendant's Second–Amended Motion to Dismiss Defendants Adriazola, Fyffe, Wors-ley, and Kearney is [DE # 6] is DENIED. Defendants shall file their answer on or before September 23, 2003. In addition, pursuant to the Court's Order of August 19, 2003, the parties shall have twenty (20) days from the date of this Order to add additional parties.